UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| KEY SAFETY SYSTEMS, INC., | |
| Plaintiff, | Case No. 16-11974 |
| v. | SENIOR U.S. DISTRICT JUDGE<br>ARTHUR J. TARNOW |
| AIG SPECIALTY INSURANCE COMPANY, | U.S. MAGISTRATE JUDGE<br>MONA K. MAJZOUB |
| Defendant. | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [14];
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [13]**

Plaintiff filed a complaint on June 1, 2016, claiming breach of contract, alleging that it is due $306,808.46 in post-judgment interest under the Defendant's insurance policy. Plaintiff and Defendant filed cross Motions for Summary Judgment [13; 14] on January 20, 2017. Responses [16; 17] were filed on February 21, 2017 and replies [18; 19] were filed on March 7, 2017. A hearing was held on these Motions before the Court on July 13, 2017. For the reasons stated below, Defendant's Motion for Summary Judgment [14] is **GRANTED** and Plaintiff's Motion for Summary Judgment [13] is **DENIED**.

**FACTUAL BACKGROUND**

The parties have stipulated to the following undisputed facts for the purposes of the pending Motions for Summary Judgment:

1. AIG Specialty issued a commercial excess liability policy to KSS bearing policy number 8124373 for the policy period September 1, 2009 to September 1, 2010 (the "Policy").

2. The Policy is excess of a self-insured retention of $2,000,000 per occurrence, subject to all related terms in the Policy.

3. On September 21, 2009, KSS was sued in Georgia state court in a products liability action entitled *Estate of Penny Bruner v. Key Safety Systems, Inc., et al.*, case number 09C-16647-5, Gwinnett County, State of Georgia (the "Underlying Action").

4. The duty to defend is not at issue in this case.

5. Operating under its $2,000,000 self-insured retention, KSS hired counsel to defend it in the Underlying Action.

6. Operating under its $2,000,000 self-insured retention, KSS elected to try the Underlying Action to a jury.

7. On November 23, 2013, the jury in the Underlying Action returned a verdict in favor of the underlying plaintiff in the amount of $4,639,416 and apportioned 80% liability against KSS. Thereafter, the Court entered a Judgment against KSS in the Underlying Action in the amount of $3,711,532.80.

8. Operating under its $2,000,000 self-insured retention, KSS paid all fees and costs incurred in its defense of the Underlying Action through the conclusion of the jury trial.

9. KSS elected to appeal the Judgment entered against it in the Underlying Action.

10. Although KSS's self-insured retention had not yet been exhausted, AIG Specialty paid 50% of KSS's defense fees and costs incurred to appeal the Judgment. KSS paid the remaining 50%.

11. On November 19, 2015, the Court of Appeals of Georgia affirmed the Judgment against KSS.

12. KSS filed a petition for *certiorari* with the Georgia Supreme Court seeking review of the decision of the Court of Appeals of Georgia, which petition was denied on April 4, 2016.

13. Following the Georgia Supreme Court's denial of the petition for *certiorari*, KSS demanded that AIG Specialty pay all amounts owed by KSS under the Judgment – including all post-judgment interest – in excess of the $2,000,000 self-insured retention under the Policy.

14. In response, AIG Specialty denied that it owed any interest attributable to KSS's $2,000,000 self-insured retention.

15. On May 23, 2016, a Satisfaction of Judgment was filed with the trial court in the Underlying Action evidencing that the Judgment against KSS in the amount of $3,711,532.80, plus interest in the amount of $586,183.82, plus court costs in the amount of $2,517.40, had been paid.

16. KSS paid $2,306,808.46 of the Judgment against it, subject to a reservation of rights. This amount was comprised of KSS's $2,000,000 self-insured retention under the Policy, plus the interest owed on that $2,000,000 self-insured retention, in the amount of $306,808.46.

17. AIG Specialty paid the balance of the Judgment entered against KSS.

[12].

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986). The Court must construe the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

The insuring agreement portion of the policy provides, in relevant part, that:

> A. We will pay on behalf of the Insured those sums in excess of the Self-Insured Retention that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law because of Bodily Injury, Property Damage, or Personal Injury and Advertising Injury to which this insurance applies or because of Bodily Injury or Property Damage to which this insurance applies assumed by the Insured under an Insured Contract.
>
> The amount we will pay for damages is limited as described in Section IV.

[12-1 at Section I, ¶A].

Endorsement 6 states that the self-insured retention limit is $2,000,000 for each occurrence for the products liability coverage provided in the policy. It further states that Defense costs are in addition to the limit and do not erode the limit. [12-1 at Pg ID 118]. Section IV details the limits of the policy as follows:

> I. We will not make any payment under this policy unless and until the total applicable Self-Insurance Retention has been satisfied by the payment of Loss…

> When the amount of Loss has been determined by an agreed settlement or a final judgment, we will promptly pay on behalf of the Insured the amount of such Loss falling within the terms of this policy…

[12-1 at Section IV, ¶I]. "Loss" is defined in the policy as "those sums actually paid as judgments or settlements." [12-1 at Section VIII, ¶H]. The scope of the SIR is detailed in Section II of the Policy declarations, stating that the most that the insured will pay for all Loss with respect to any one covered occurrence is the Self-Insured Retention, *i.e.* $2,000,000.

Plaintiff argues that the policy unambiguously gives Plaintiff the right to recover the post-judgment interest it paid on the underlying judgment at issue in this case. Plaintiff argues that per the plain language of the policy, Plaintiff satisfied its SIR obligation when it paid the first $2,000,000 of the judgment. Once that was done, Plaintiff argues that Defendant was obligated to promptly pay the remainder, "regardless of whether it was for interest, damages, or both." [13 at 12]. To support the proposition that post-judgment interest is synonymous with a judgment, and thus qualifies as part of the "loss" defined in the policy, Plaintiff cites Georgia law O.C.G.A. 7-4-12(c), which provides that post-judgment interest will be applied automatically to all judgments in the state, and that the interest "shall be collectable as a part of each judgment whether or not the judgment specifically reflects the entitlement to postjudgment interest." Defendant argues that the policy dictates that the insurer will pay the amount of loss determined by

an agreed final judgment that falls within the terms of the policy and since post-judgment interest is not included in the definition of loss, they are not liable for that amount. [12-1 at Section IV, ¶I].

The judgment itself is clear – the jury awarded $3,711,532.80 for compensatory damages in the underlying action, and the trial court later added $586,183.82 in post-judgment interest after the exhaustion of appeals. It is clear from this that the two- the judgment as to the damages determined by the jury, on the one hand, and the post-judgment interest, on the other, are separate. This conclusion is supported by case law as Courts have recognized that damages and interest are distinct concepts since interest exists to "recompense the prevailing party for the delay in payment of the money damages determined." *Denham v. Bedford*, 287 N.W.2d 168, 173 (Mich. 1980); *see also JTH Tax, Inc. v. Flowers*, 716 S.E.2d 559, 560 (Ga. Ct. App. 2011) (Post-judgment interest under OCGA §7–4–12(a) is "intended to deter post-judgment delay and bring finality to judgments.").

The policy itself explicitly states that Defendant, the insurer, will be responsible for post-judgment interest in two circumstances,

- When we[the insurer] assume the defense of any Suit against the Insured that seeks damages covered by this policy we will pay…post-judgment interest that accrues after entry of judgment on that part of the judgment within the applicable Limits of Insurance of this policy we pay and before we pay and before we have paid, offered to pay or deposited in court

> that part of the judgment that is within the applicable Limits of Insurance of this policy
>
> - If the Insured does not appeal a judgment in excess of the Self-Insured Retention, we may elect to do so. If we do appeal, we will be liable for, in addition to the applicable Limits of the Insurance of this policy, all court costs, expenses incurred, and interest on that amount of any judgment which does not exceed the applicable Limits of Insurance of this policy incidental to such an appeal.

[12-1 at Section III, ¶C; Section VI, ¶A]. It is undisputed amongst the parties that under Michigan law, courts analyze insurance policies under contract law principles. Under Michigan law of contracts, the Court must read the policy as a whole and give meaning to all of its terms, while also avoiding a construction that would render any section of the contract as surplusage. *Klapp v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447, 453 (Mich. 2003). The very fact that post-judgment interest is singled out in these sections as being paid by the insurer in these limited circumstances provides further support that Plaintiff's position must fail. These statements in the policy quoted above contemplate that judgment and post-judgment interest are separate entities; if Plaintiff were correct, there would be no need to include post-judgment interest specifically in these provisions because Defendant would already be liable to pay interest if it was included in the definition of covered "loss."

Plaintiff further argues that since post-judgment interest is not explicitly excluded anywhere in the policy, that Defendant must pay it because, per the

policy, $2,000,000 is the most Plaintiff will be obligated to pay under the policy on a judgment. However, the policy is clear in the limits of insurance section that the insurer will promptly pay the amount of such loss, in excess of the SIR, that falls within the terms of the policy. As explained above, it is clear from the plain language of the policy that post-judgment interest is not included as covered loss unless the one of two specific and limited instances occur. Therefore, Defendant is not in violation of the policy by failing to pay the $306,808.46 in post-judgment interest. Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [14] is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment [13] is **DENIED**.

**SO ORDERED**.

Dated: July 20, 2017

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge